Argued on motion to stay execution June 11, denied June 18, 1918.

# GEARIN v. FLECKENSTEIN.

### (173 Pac. 569.)

**Mortgages—Moratorium.**

1. Laws of 1917, page 515, Section 1, granting enlisted men in the Army or Navy or National Guard of the United States a moratorium as to mortgages, does not apply to one enlisting in the Oregon State Guard, whose only duty is to guard shipyards and other places of that character within the state.

**Mortgages—Stay of Execution—Counter-undertaking—"Contract."**

2. Section 553, L. O. L., relating to counter-undertakings on stay of execution, applies to executions issued to enforce decrees of foreclosure; a mortgage being a "contract" within the meaning of that section.

**Appeal and Error—Execution—"Stay."**

3. Where appeal has been perfected, and stay bond, required by Section 553, L. O. L., has been filed, the execution theretofore issued does not become *functus officio*, and the judgment creditor is not compelled to take out a new execution upon giving the counter bond; the words "stay the proceeding" meaning to stop, to arrest, to forbear, and not contemplating any affirmative action, such as returning an execution unsatisfied.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 2.

This is a motion to stay execution on a decree against the defendants foreclosing a mortgage. The complaint was in the usual form setting forth breaches of the conditions of the instrument and default of payments when due. After demurrer, the defendant W. P. Adams answered, generally denying every allegation of the complaint and entered a plea in abatement stating that Mrs. Amelia G. Adams, his wife, had acquired title to the property after the mortgage was executed; that he had an inchoate right of curtesy therein, and that he was enlisted and in actual service in the Oregon State Guard, a voluntary organiza-

tion in the military service of the United States, and prayed for abatement until his term of enlistment should have expired, as provided in Section 1, Chapter 275, Gen. Laws 1917, which is as follows:

"No suit or action shall be commenced or maintained, during the period hereinafter provided for, to foreclose any mortgage upon reàl property, or to collect the debt secured thereby, if the land covered by the mortgage be owned, wholly or in part, by an enlisted man in the Army or Navy of the United States, who shall have enlisted therein in the volunteer forces or who shall have been enlisted in the National Guard of the United States and of the state of Oregon and his organization called into the service of the United States; and the lands of any such soldier or sailor shall be exempt from judicial sale for the satisfaction of any judgment during the period hereinafter provided for; provided, that this moratorium shall extend only during the period of actual service in the army or navy forces of the United States, and in no case shall begin prior to the day on which the Congress of the United States shall declare war, nor continue after sixty days subsequent to the conclusion of such war; provided, that all statutes of limitation in effect in the state of Oregon shall be suspended during the period above described, as to the mortgages, debts and judgments in this Act described."

The testimony indicated that W. P. Adams was a member of what is known as the Oregon State Guard, an organization not identical with the Oregon National Guard, but which had occasionally been called to do guard duty at the shipyards and other places of that character. The court held that this organization was not such as is contemplated by the act of 1917, *supra,* and entered a decree foreclosing the mortgage, from which decree defendants appealed, giving the usual stay bond. Plaintiff thereupon gave a counter bond as provided in Section 553, L. O. L., and execution

and order were issued directing the sale of the property. The sheriff levied and was proceeding to sell the property when defendants applied to this court for an order to recall the execution, and an order was made staying the execution and directing that sale be postponed until a hearing upon the motion could be heard in this court.

MOTION TO STAY EXECUTION DENIED.

For the motion, there was a brief over the names of *Mr. Ralph R. Duniway* and *Mr. W. P. Adams,* with an oral argument by *Mr. Duniway.*

*Contra,* there was a brief over the names of *Mr. Hall S. Lusk* and *Mr. Hugh C. Gearin,* with an oral argument by *Mr. Lusk.*

McBRIDE, C. J.—1. The defense, so far as it relates to Adams' military status, is a mere subterfuge and without merit. The defendant Adams is neither an enlisted man in the army of the United States nor of the State of Oregon, which has been called into the service of the United States. The organization is purely a state affair and is for service within the state and could not under any existing law be called into the service of the United States in the present war. The act of 1917 was passed to protect those in actual military service in the war from being harassed by actions or suits while absent defending their country. The defendant Adams is a lawyer 50 years of age and not subject to military service, is a member of this voluntary military organization, and has performed guard duty for a few hours for fifteen days at one of the shipyards. He practices his profession in the city and there is nothing to interfere with his defending any suit brought against him if he has any legitimate

defenses, although the record here indicates that he has none. It is true that all the allegations of the complaint were denied, but the record indicates that most of the denials are absolutely false, and such as the attorney who argued the motion in this court would never have advised a client to make.

2. The main question in the case is whether Section 553, L. O. L., relative to counter undertakings, applies to execution issued to enforce decrees of foreclosure. The section referred to is as follows:

"If the judgment or decree has been given in an action or suit upon a contract, notwithstanding an appeal and undertaking for the stay of proceedings, the respondent may proceed to enforce such judgment or decree, if within ten days from the time the appeal is perfected he filed with the clerk an undertaking, with one or more sureties, to the effect that if the judgment or decree be reversed or modified the respondent will make such restitution as the appellate court may direct. Such undertaking may be excepted to by the appellant in like manner and with like effect as the undertaking of an appellant, and the sureties therein shall have the same qualifications."

It requires no citation of authorities to show that a mortgage is a contract, and as contracts bind both parties and their privies, it is a contract which may be enforced not only against the original parties but against the defendant Adams, who purchased subsequent to the execution of the mortgage. A suit to enforce a mortgage on foreclosure according to its terms is necessarily a suit upon the contract and nothing else, and, therefore, clearly within the statute.

3. It is further insisted that when the defendants perfected their appeal and filed the stay bond requested by Section 553, the execution theretofore issued became *functus officio,* and that plaintiff upon giving the

counter bond would be compelled to take out a new execution. We find nothing in the statute to support this contention. The statute provides that the effect of the order shall be to "stay the proceeding." The words "to stay" apply to future action and mean "to stop," "to arrest," "to forbear." They do not contemplate any affirmative action such as returning an execution unsatisfied, and when the counter undertaking is given the ban of the statute is automatically removed and the proceedings temporarily stayed, resume their progress. Section 553 provides that upon giving the counter undertaking "the respondent may proceed to enforce such judgment or decree." We are of the opinion, construing the whole statute together, it was the evident intent of the lawmakers that upon the giving of the counter undertaking the proceedings should be resumed at the point where they were interrupted, and if it had been intended the plaintiff should go through the useless formality of causing the execution already issued and not satisfied, to be returned and file his counter undertaking and cause a new execution to be issued thereafter, it would have made such an intention plain by express language.

It is also said it is in the power of the court to preserve the *status quo* in any event by an order made, irrespective of the statutory stay. Conceding without deciding that we have such authority we see nothing in the present case to justify us in exercising it. The order heretofore made is vacated and the sheriff is permitted to proceed with the sale.

MOTION TO STAY EXECUTION DENIED.

JOHNS, BEAN and HARRIS, JJ., concur.